JAMES BURDICK *et ux. vs.* THOMAS P. I. GODDARD *et al.,* Executors.

Testamentary disposition as follows : "I give and bequeath to my affectionate niece, M. A. H., wife of C. D. H., of Roxbury, Massachusetts, the sum of two thousand dollars, one half part thereof to be paid out of the instalment of ten thousand dollars due me from the government of Buenos Ayres, payable in October, 1855, and the other half part thereof to be paid out of the instalment of ten thousand dollars due me from said government of Buenos Ayres, payable in October, 1856. And I hereby order and direct the executors of my last will and testament aforesaid, as soon as conveniently may be after the collection and receipt of said instalments, to place and deposit the two sums of one thousand dollars each, as aforesaid, in the Providence Institution for Savings, there to accumulate, and that they hold and retain the same in their names as trustees for the said M., and that they pay over to the said M., for her sole and separate use and benefit, and upon her sole and separate receipt and discharge, such part of said fund, whether of interest or principal, or both, at such times and in such sums as they in their discretion shall consider expedient, necessary, and proper. And in case said M. should die, and said fund or any part thereof should still remain undisposed of in the hands of said executors as aforesaid, I order and direct that they pay said fund to the heirs at law of said M. A. H." : —

*Held,* that the powers and discretion given to the trustees were essential to the purpose of the trust, and passed to the successors in trust of the original trustees.

M. A. H., after the death of her husband, married again : —

*Held,* that the trust extended over the new coverture.

*Held,* further, the original trustees being dead, that the court would appoint a new trustee with the powers given by the will, but would not order the trust fund paid over to the beneficiary to end the trust.

BILL IN EQUITY against the executors of the last surviving executor of the late Thomas L. Halsey, of Providence, and against the Providence Institution for Savings. The bill set out the following clause of the will of Thomas L. Halsey : —

" I give and bequeath to my affectionate niece, Mary Anna Head, wife of Charles D. Head, of Roxbury, Massachusetts, the

sum of two thousand dollars, one half part thereof to be paid out of the instalment of ten thousand dollars due me from the government of Buenos Ayres, payable in October, 1855, and the other half part thereof to be paid out of the instalment of ten thousand dollars due me from the said government of Buenos Ayres, payable in October, 1856. And I hereby order and direct the executors of my last will and testament aforesaid, as soon as conveniently may be after the collection and receipt of said instalments, to place and deposit the two sums of one thousand dollars each, as aforesaid, in the Providence Institution for Savings, there to accumulate, and that they hold and retain the same in their names as trustees for the said Mary, and that they pay over to the said Mary, for her sole and separate use and benefit, and upon her sole and separate receipt and discharge, such part of said fund, whether of interest or principal, or both, at such times and in such sums as they in their discretion shall consider expedient, necessary, and proper. And in case said Mary should die, and said fund or any part thereof should still remain undisposed of in the hands of said executors as aforesaid, I order and direct that they pay said fund to the heirs at law of said Mary Anna Head : " —

charged that the executors deposited in their names as trustees the $2,000, which on July 1, 1876, had accumulated to $4,428.20 ; that all the original trustees were dead, and that the respondent executors were the executors of the last surviving trustee, the other respondent being the Providence Institution for Savings, and prayed for a decree ordering the respondents to pay over to the complainant, Mrs. Burdick, the whole fund, with an alternative prayer for the appointment of a new trustee, and asking that his powers under the will might be defined by the court.

All the respondents admitted the allegations of the bill.

*March* 3, 1877. POTTER, J. It is contended for the complainants : —

1. That the will gives the interest in the property to Mrs. Head, and that it is not cut down by the subsequent words.

2. That if the trust was good for Mrs. Head's then existing marriage, she would be entitled to have it transferred to her on becoming *discovert*, and that the trust should not be kept alive for a second marriage.

3. That the discretion given to the trustees in the will would not pass to any new trustees ; and that therefore nothing could be gained by the continuance of the trust.

We think the first paragraph of the bequest to Mrs. Head, and the subsequent direction to the executors to hold it in trust, are to be read together in order to ascertain the testator's intention. A case somewhat similar is *Leavitt* v. *Beirne et als.* 21 Conn. 1.

Where the instrument creating the trust shows that a discretion was reposed by the testator because of his peculiar confidence in the trustees first named by him, it has been held in many cases that such discretion will not pass to new trustees appointed by the court.

But where the withholding this discretionary power from the new trustees would defeat the very object of the trust, the rule is different ; for the intention of the testator, when it can be ascertained, must govern.

And his intention that Mrs. Head should not have the absolute disposal of the property, at least during coverture, could not be more strongly expressed.

There has been a great deal of ingenuity exercised upon the subject of trusts and powers, and mixed powers and trusts ; but in all of them the design of the courts seems to have been to carry out the testator's intention. *Gower* v. *Mainwaring*, 2 Ves. 87–89 ; *Brown* v. *Higgs*, 5 Ves. Jun. 495, 505 ; also in 8 Ves. Jun. 561, 570 ; *Cole* v. *Wade*, 16 Ves. Jun. 27 ; 2 Lead. Cases in Eq. 4th Am. ed. \*964.

In cases where the powers are merely collateral and subsidiary, as in some cases of powers to sell or lease, &c., the court might well consider them as not of the essence of the trust, and that therefore they would not pass to new trustees unless such intention was plainly expressed.

· But we may well ask the question in the present case, Can the trust be executed without the power ? Would not the object of the testator be entirely defeated by holding that the power and discretion do not pass.

An argument might be drawn from the fact that the power is reposed in his executors without naming them ; but we dislike to draw an inference from what may have been merely an accident on the part of the scrivener.

And the power in this case seems to be of that class described by Lord Eldon, where its exercise is to be considered imperative, although there may be a discretion as to the mode; a power which the party to whom it is intrusted is required to execute, because otherwise the whole purpose of the trust would fail. The trust and power are so coupled, that one is essential to the existence of the other. It may be treated as a power belonging to the office.

It is not necessary here to express any opinion on the point whether between her two marriages Mrs. Head, now Mrs. Burdick, might have compelled a transfer to herself, or might have alienated her interest. *Woodmeston* v. *Walker*, 2 Russ. & M. 197.

It is sufficient to say the tendency of the best later authorities in chancery is to hold that, in case of a second marriage, the trust with its restraints would revive. Snell's Eq. (3d ed.) 307; Lewin on Trusts, 566; *Tullett* v. *Armstrong*, 1 Beav. 1; affirmed on appeal, 4 M. & C. 377; 2 Spence Eq. Jur. 524; *Buttanshaw* v. *Martin*, Johns. 89.

The separate estate is a creation of equity, and its rules should be so modified as to protect the wife in the enjoyment of it. Lord Langdale in *Tullett* v. *Armstrong*, 1 Beav. 1, 22; and Lord Cottenham in same case on appeal, 4 M. & C. 377, 405.

And in this country the disposition of the courts has been strongly manifested in favor of protecting such provisions against the acts of the *cestuis que trust* themselves, either during coverture or in contemplation of marriage. 2 Story Eq. Jur. 1395.

We think, therefore, that no decree should be made for an immediate conveyance of the property to Mrs. Burdick; but that if the parties desire it a new trustee or trustees may be appointed, with the powers given to the trustees appointed by will, which will probably secure to the *cestui que trust* the full benefit of the trust.

*Decree appointing a new trustee, ordering the respondents to pay over the trust funds to the new trustee, and directing him to hold them with all the powers and discretions given to the original trustees by the will of Halsey.*

*Thomas C. Greene & William H. Bliss*, for respondents.
*Tillinghast & Ely*, for complainants.

NOTE. — DURFEE, C. J., did not take part in the above decision.